UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| XMOD INDUSTRIES, a California Corporation, MICHAEL KATSELI, an individual and LINUS CHEE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL KENNEDY, an individual and MRKT LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT

Plaintiffs, XMOD Industries d/b/a Netvrk ("Netvrk" or the "Company"), a California corporation, Michael Katseli, and Linus Chee, by and through their attorneys, Dinsmore & Shohl LLP, as and for their Verified Complaint against Defendants, Daniel Kennedy and MRKT LLC, hereby state and allege as follows:

### INTRODUCTION

1. This action seeks to recover Netvrk's corporate assets and to terminate the fraudulent and defamatory scheme perpetuated by Kennedy against the Company and its co-founders. Netvrk is a metaverse that allows users to create their own content and provides users the ability to monetize their creations through the Netvrk Metaverse. Shortly after Kennedy was retained as an independent consultant, he began his scheme of deceit and misrepresentations to gain control over integral components of Netvrk, including its social media and marketing outlets and key partner relationships. Kennedy manipulated his consultancy with Netvrk to gain the trust and confidence of Netvrk's founders, employees, and outside partnerships, and in doing so converted nearly $564,000 of Netvrk's assets. Not only did Kennedy wrongfully assume the title

of Netvrk's Chief Executive Officer, he has wrongfully retained, despite repeated demands, all of the corporate records and information relating to the services that he performed on Netvrk's behalf. As a result, on August 25, 2022, Netvrk terminated its relationship with Kennedy.

2. Since his termination, Kennedy has continually refused to return Company assets and has overtly defamed Netvrk and its co-founders. Mostly recently, Kennedy has seized control of one of Netvrk's most valuable business assets: its Twitter account. Netvrk's Twitter account has over 100,000 followers and is one of the primary ways in which Netvrk announces new releases, updates, and events within the Netvrk Metaverse. Not only has Kennedy intentionally published multiple defamatory statements on Netvrk's Twitter account, but he now has changed the account handle to an entirely new name.

3. Kennedy's actions have obstructed Netvrk's ability to communicate with its 100,000+ community users. Kennedy's actions have hindered Netvrk's ability to keep abreast in the high-paced and rapidly evolving metaverse, causing users to lose interest and confidence in the Netvrk brand. Netvrk has and will continue to sustain irreparable harm unless and until Kennedy's behavior is enjoined and Netvrk rightfully regains control of assets which Kennedy has no right to possess.

**PARTIES**

4. Plaintiff, XMod Industries d/b/a Netvrk ("Netvrk"), is a corporation organized under the laws of the state of California.

5. Plaintiff, Michael Katseli ("Katseli"), is an individual residing in Thousand Oaks, California. Katseli is the co-founder of Netvrk and its Chief Technology Officer.

6. Plaintiff, Linus Chee ("Chee"), is an individual residing in Las Vegas, Nevada. Chee is the co-founder of Netvrk and its Chief Executive Officer.

7. Defendant, Daniel Kennedy ("Kennedy"), is an individual who is a citizen of the United States who previously resided in Boston, Massachusetts.

8. Defendant, MRKT LLC, is a limited liability company which on information and belief is organized under the laws of the state of Delaware and maintains a business address of 177 Huntington Drive, #1700, PNB Suite 9542, Boston, Massachusetts 02115. On information and belief, MRKT LLC is solely owned by Kennedy.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Plaintiffs and Defendants are residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. As such diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because there is no judicial district in which a substantial part of the events giving rise to the claim occurred. Netvrk does not maintain a physical corporate office. Defendant Daniel Kennedy is subject to the Court's personal jurisdiction because he lived in Boston, Massachusetts while working for Netvrk. In addition, on information and belief, Kennedy is the sole owner of MRKT LLC, an entity with a business address of 177 Huntington Drive, #1700, PNB Suite 9542, Boston, Massachusetts 02115.

## FACTS RELEVANT TO ALL COUNTS

**I.  The Creation of Netvrk**

11. Netvrk was co-founded by Katseli and Chee for the purpose of developing and operating a metaverse where individuals can easily create their own fully immersive virtual reality worlds and experiences. A metaverse is a digital platform focused on virtual and augmented reality. The metaverse is not one digital space, but several digital spaces and experiences currently

being created by companies such as Netvrk to offer more realistic and immersive digital experiences. The Netvrk metaverse is designed to allow users to be able to create their own unique virtual world and invite their friends and visitors for socializing, gaming, training, and even work.

12. The Netvrk metaverse also allows users to create, buy, and sell goods using the Netvrk token. The Netvrk token can be used to buy assets within the Netvrk metaverse including buildings, vehicles, houses, land, and advertising space and is even currently traded on several major centralized exchanges. The Netvrk token can also be used to generate Non-Fungible Tokens ("NFTs") as a way for users to earn additional income. An NFT is a digital asset that represents real-world objects like art, music, in-game items and videos. Essentially, NFTs are like physical collector's items, only digital. Instead of getting an actual painting to hang on the wall, the buyer gets a digital file instead.

## II. Kennedy Is Retained as an Independent Marketing Consultant

13. In early 2021, Netvrk was in need of an individual with marketing experience related to cryptocurrency and the metaverse. Shortly thereafter, Katseli retained Kennedy on an independent contractor basis to assist Netvrk in its marketing activities and business development including social media management, social media marketing, content creation marketing, advertising, influencer marketing, and investor and partnership procurement and arrangement. Kennedy was further tasked with raising money for Netvrk and obtaining the required documentation associated with such capital raises. Kennedy adopted the title of Chief Marketing Officer ("CMO").

14. Kennedy was an independent contractor, and not an employee. Kennedy was never treated or classified as an employee and never received a W-2.

15. Shortly after Kennedy was retained, Katseli, Chee, and other Netvrk employees realized that Kennedy was unqualified for the role and inexperienced in critical knowledge necessary for 3D asset development. Multiple Netvrk employees even quit citing issues with Kennedy as their primary reason for leaving.

16. Making matters worse, Kennedy began to act without authority and began excluding Netvrk's founders from communications with some of its most important business relationships. For instance, on or about May 2022, Kennedy removed Mr. Chee from private communications between Netvrk and two of its biggest partnership groups, Polygon and Dame Dash Studios. As a result, Plaintiffs were required to expend additional monies and resources to renegotiate these key relationships as Kennedy continued to withhold information surrounding these relationships.

17. In early 2022, Kennedy began referring to himself as the CEO of Netvrk. Kennedy was never promoted, elected, or otherwise properly titled as Netvrk's CEO.

18. Despite repeated requests during and following his termination, Kennedy has refused to provide Netvrk with access to or the login credentials for any of Netvrk's social media accounts including Twitter, Instagram, LinkedIn, Linktree, Twitch, Reddit, Publish0x, Medium, and Tik Tok (the "Netvrk Social Media Accounts"). Plaintiffs depend heavily on their online presence to advertise their businesses, which requires the ability to continuously update their profiles and pages and react to online trends.

19. Netvrk's Twitter account, @NetVRk1, has over 100,000 followers and is one of the primary ways in which Netvrk announces new releases, updates, and events within the Netvrk Metaverse.

20. Plaintiffs have been locked of the Netvrk Social Media Accounts despite repeated requests for the login credentials and passwords. Kennedy has no right, title, or claim to the Netvrk Social Media Accounts.

**III. Kennedy Converts Over 564,000 From Netvrk To His Own Personal Digital Wallet**

21. In fall of 2021, Netvrk announced its first ever sale of a limited collection of Netvrk NFTs designed in collaboration with a highly sought after graphic designer (the "Netvrk NFT Sale"). The Netvrk NFT Sale was titled a "Transport Sale" as the NFTs were all different vehicles designed to travel within the Netvrk Metaverse.

22. The Netvrk NFT Sale took place over seven (7) rounds on a third-party website, TrustPad.

23. After the Netvrk NFT Sale was complete, and unbeknownst to Netvrk, Kennedy contacted TrustPad and directed its co-founder to transfer the Netvrk NFT Sale proceeds to Kennedy's own personal digital wallet.

24. Netvrk, through Katseli and Chee, demanded for Kennedy to transfer the Netvrk NFT Sale proceeds to Netvrk, which Kennedy refused. Kennedy claimed that he was entitled to retain the Netvrk NFT Sale proceeds.

25. Kennedy has no right or claim to any of the Netvrk NFT Sale proceeds.

**IV. Kennedy Is Terminated From His Consulting Role**

26. On August 25, 2022, Netvrk terminated Kennedy. Later that day, Kennedy publically posted a series of tweets on the social media platform Twitter defaming Netvrk, Katseli, and Chee.

27. Kennedy tweeted a series of false and defamatory messages (the "Defamatory Statements") containing false statements intended to injure Netvrk and its founders.

    a.    **First Tweet**: It has come to my attention that Mike Katseli and Linus Chee are making false claims about me. This is a picture of the house that Mike Katseli purchased with the help of Linus Chee, for $3.75 million, using investor raised funds. This was all done behind me, the CEO's back.

    b.    **Second Tweet**: And they illegally used Netvrk's financial/bank account deposits, to qualify for the mortgage loan, When I discovered this, I contacted Linus and Mike who said they would make things right.

    c.    **Third Tweet**: In retaliation, Linus and Mike have cut me off from the company, and defamed me by making untrue statements. As a whistleblower, this is pure retaliation.

    d.    **Fourth Tweet**: Truth is a defense to slander. And I am telling you the truth. I have been verbally abused by both Linus and Mike and now you can all see what I've been going through. It's been pure hell working with them. More pictures of Mike's house purchased with investor funds.

    e.    **Fifth Tweet**: Picture of the Lambo Urus Mike bought, while not doing any work for the company for well over a year!

28. The Defamatory Statements were instantly circulated on multiple cryptocurrency communication channels including Telegram and Twitter.

29. As a result of the Defamatory Statements, Netvrk's token value plummeted nearly 50%.

30. New Kids on the Blockchain, a leading content provider in the blockchain and cryptocurrency space, dedicated an entire YouTube segment to Kennedy's Defamatory Statements and the resulting fallout within the industry. Netvrk investors and consumers commented repeatedly within the community that Netvrk was no longer viewed as a reputable project or investment. This was Kennedy's intent.

31. On September 7, 2022, Plaintiffs learned that Kennedy deleted and/or deactivated Netvrk's official Twitter account. According to Twitter's terms of service, users only have 30 days

to reactivate a previously deactivated account. After 30 days, Netvrk will be unable to reactivate its Twitter account, resulting in the loss of Netvrk's entire Twitter account history and its followers.

32. Later that same day, Kennedy changed Netvrk's Twitter account name from "Netvrk" to "State of NFT" which purportedly "tweet[s] about the State of NFTs." The State of NFT account includes all of Netvrk's previous posts.

33. Kennedy's conduct directly harmed, and continues to harm, Netvrk's reputation, making it more difficult for the company to develop its business and related products and services.

34. The reputational damage caused will likely manifest itself in additional and ongoing ways, including but not limited to creating obstacles for Plaintiffs in attracting and retaining talent. Kennedy's false and defamatory statements did substantial harm to Netvrk as an ongoing business in a growing and extremely competitive business sector.

35. Kennedy's control over the Netvrk Social Media Accounts, and investor related documents and information, has and will continue to irreparably harm the Plaintiffs.

## Count I
### *Declaratory Judgment (Against All Defendants)*

36. Plaintiffs re-allege and incorporate Paragraphs 1 through 35 as if fully stated herein.

37. Defendants' refusal to provide Netvrk with access to or the login credentials for the Netvrk Social Media Accounts and Kennedy's assertion that he maintains a right to, or ownership over, the Netvrk Social Media Accounts has created an actual case and controversy.

38. An additional controversy exists regarding whether Defendants have any claim, right, or title to a percentage of equity in Netvrk or any of its agents, successors, assigns, or related entities. Kennedy claims that he was orally promised a 5% equity share in the Company which was never formally finalized.

39. Plaintiffs deny Kennedy's claims.

40. A declaratory judgment is necessary to guide the parties' future conduct and their respective rights, obligations, and legal relations.

41. Plaintiffs depend heavily on the Netvrk Social Media Accounts to market and grow their business. The Netvrk Social Media Accounts require continuous updates and the ability to react to online trends or feedback from the community. Plaintiffs inability to access or use any of the Netvrk Social Media accounts hinders Netvrk's ability to remain competitive, and the magnitude of that effect is difficult, if not impossible, to quantify in monetary terms. Such injury constitutes irreparable harm for which there is an inadequate remedy at law.

42. The balance of harms tips decisively in favor of Plaintiffs and against Kennedy with respect to injunctive relief. Kennedy is an intentional wrongdoer who has actively continued his misconduct, even after being provided ample notice and opportunity to return the requested information.

43. Kennedy's actions have caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

44. Plaintiffs have been harmed, and will continue to be harmed by Defendants' actions and are entitled to injunctive and declaratory relief.

WHEREFORE, Plaintiffs, XMOD Industries d/b/a Netvrk, Michael Katseli, and Linus Chee, pray that this Court:

A. Enter a preliminary and permanent injunction ordering Defendants to turn-over of the account names, login information, and associated passwords for each of the identified Netvrk Social Media Accounts;

B. Enter a preliminary and permanent injunction imposing a constructive trust over Xmod's assets that were unlawfully retained and misappropriated, and subsequently enter a mandatory injunction requiring Kennedy to return Xmod's assets;

C. Find and declare that Defendants do not have any claim, right, or title to any equity interest in XMod including any of its agents, successors, assigns, or any and all persons or entities related to Xmod;

D. Find and declare that Kennedy was never an employee of Xmod or any of its agents, successors, assigns, or any entity related to Xmod; and

E. Grant such further and other relief as this Court deems just and equitable.

## Count II
### *Breach of Fiduciary Duty (Against Kennedy)*

45. Plaintiffs re-allege and incorporate Paragraphs 1 through 35 as if fully stated herein.

46. In his role at Netvrk, Kennedy entered into a confidential relationship with Netvrk and was given access to proprietary business processes and client records. Kennedy had complete access to and control over Netvrk company assets, including but not limited to company funds and the Netvrk Social Media Accounts.

47. As such, Kennedy owed a fiduciary duty to Netvrk, including the duty of loyalty, which required Kennedy to act in good faith and in the best interest of Netvrk and its respective investors, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

48. In holding himself out as Netvrk's Chief Executive Officer, Kennedy acted for and on behalf of Netvrk, and similarly owed a fiduciary duty to Netvrk.

49. Kennedy breached his fiduciary duties to Netvrk by:

   a. Misappropriating Netvrk's Social Media Account information, including login credentials and passwords, to the exclusion of the Company and its founders;

   b. Misappropriating and wrongfully retaining Netvrk's business records, the scope of which is undetermined, including but not limited to material information relating to Netvrk's investors;

   c. Converting $564,000 to his own personal digital wallet despite repeated demands to return; and

d. Publishing the Defamatory Statements identified in Paragraph 27, *supra*.

50. Kennedy actively exploited his position at Netvrk for his own personal benefit and to hinder Netvrk's ability to conduct business. By engaging in the aforesaid conduct, Kennedy failed to act in good faith and in the best interests of Netvrk and instead placed is own personal and pecuniary interests above those of Netvrk.

51. Netvrk has been damaged as a direct and proximate result of Kennedy's actions. Kennedy's conduct directly harmed the reputation of Netvrk, making it more difficult for the Company to develop its business and related products and services as Kennedy's defamation was repeated and republished in industry media.

52. Unless enjoined by the Court, Kennedy will continue to retain unauthorized control over Netrvk's assets, including the Netvrk Social Media Accounts.

53. Plaintiffs depend heavily on their online presence to advertise their businesses, which requires continuous updates and the ability to react to online trends or feedback from the community. Plaintiffs' inability to access or utilize the Netvrk Social Media Accounts has a negative effect on Netvrk's reputation and ability to remain competitive. The magnitude of that effect is difficult, if not impossible, to quantify in monetary terms. Such injury constitutes irreparable harm.

54. The balance of harms tips decisively in favor of Plaintiffs and against Kennedy with respect to injunctive relief. Kennedy is an intentional wrongdoer who has actively continued his misconduct, even after being provided ample notice and opportunity to return the requested information.

55. Kennedy has been inequitably enriched by his willful breaches of fiduciary duty. Kennedy acted in conscious disregard of the rights of Netvrk, therefore justifying an award of punitive damages in an amount to be proven at trial.

56. Kennedy's actions have caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs, XMod Industries d/b/a Netvrk, Michael Katseli, and Linus Chee, pray that this Court:

A. Enter an Order finding that Defendant, Daniel Kennedy, breached his fiduciary duty, and that as a result of Defendant's breach of his duties, Xmod has been damaged, in an amount to be determined at trial;

B. Enter an Order disgorging the compensation received during the time period when Kennedy was in breach of his duties;

C. Enter a preliminary and permanent injunction mandating the turn-over of the account names, login information, and associated passwords for each of the identified Netvrk Social Media Accounts;

D. Enter a preliminary and permanent injunction imposing a constructive trust over Xmod's assets that were unlawfully retained and misappropriated, and subsequently enter a mandatory injunction requiring Kennedy to return Xmod's assets;

E. Enter an order mandating and requiring Kennedy to preserve all data and information in his control or possession reflecting or relating to his role at Xmod;

F. Enter judgment in favor of Plaintiffs, in an amount to be determined as trial, plus punitive damages due to Kennedy's willful conduct; and

G. Grant such other further relief as this Court deems just and appropriate.

### Count III
### *Conversion (Against Kennedy)*

57. Plaintiffs re-allege and incorporate Paragraphs 1 through 35 as if fully stated herein.

58. Plaintiffs have an absolute and unconditional right to possession of the proceeds generated from the Netvrk NFT Sale.

59. Kennedy retained the Netvrk NFT Sale proceeds without Netvrk's authority and without any basis.

60. Plaintiffs have demanded for the immediate return of the proceeds generated from the Netvrk NFT sale which are being wrongfully held by Kennedy.

61. Plaintiffs have a further possessory right to the login and account information for each of the identified Netvrk Social Media Accounts. Kennedy has wrongfully and without authority or permission taken control of Netvrk's Social Medial Accounts and have used said accounts to defame the Plaintiffs.

62. Plaintiffs have demanded for the turnover of the Netvrk Social Media Account login and password information.

63. Kennedy has wrongfully and without authorization assumed and retained control, dominion, and ownership over the Netvrk NFT Sale proceeds and Netvrk Social Media Account information despite repeated demands.

64. Plaintiffs depend heavily on the Netvrk Social Media Accounts to market and grow their business. Plaintiffs inability to access or use any of the Netvrk Social Media accounts hinders Netvrk's ability to remain competitive, and the magnitude of that effect is difficult, if not impossible, to quantify in monetary terms. Such injury constitutes irreparable harm for which there is an inadequate remedy at law.

WHEREFORE, Plaintiffs, XMOD Industries d/b/a Netvrk, Michael Katseli, and Linus Chee, pray that this Court:

    A. Enter a preliminary and permanent injunction requiring Kennedy to turn over the Netvrk NFT Sale proceeds which he is unlawfully withholding;

    B. Enter a preliminary and permanent injunction mandating the turn-over of the account names, login information, and associated passwords for each of the identified Netvrk Social Media Accounts; and

C.  Grant such further and other relief as this Court deems just and equitable.

## COUNT IV
### *Defamation Per Se (Against Kennedy)*

65. Plaintiffs re-allege and incorporate Paragraphs 1 through 35 as if fully stated herein.

66. Kennedy published or caused to be published false and defamatory statements on Twitter and other social media outlets regarding Netvrk, Linus, and Katseli.

67. Each of the false statements published by Kennedy, when read together described in Paragraph 27 is defamatory on their face and constitute defamation *per se*.

68. Kennedy authored and published the Defamatory Statements without reasonable care as to the truth or falsity of these statements. The foregoing accusations against each of the Plaintiffs are demonstrably false.

69. Kennedy's false and defamatory statements caused actual damages. As a result of Kennedy's statements, Netvrk's value plummeted. Kennedy's conduct caused a major price collapse of the Netvrk token causing an enormous amount of direct monetary damage, and reputational business harm. Additionally, sales for NFTs also decreased as consumers worried whether land and transport within the Netvrk metaverse would have no value.

70. The above-referenced published statements constitute egregious conduct constituting malice. Kennedy's acts were willful and malicious. As such, in addition to compensatory damages, Plaintiffs seek punitive damages relating to Kennedy's defamatory statements, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, XMOD Industries d/b/a Netvrk, Michael Katseli, and Linus Chee, pray that this Court enter judgment in favor of Plaintiffs in an amount to be determined at trial, including punitive damages, and grant such other further relief as this Court deems just and appropriate.

## Count V
### *Unjust Enrichment (Against Kennedy and MRKT LLC)*
**(In the Alternative)**

71. In the alternative to Count II, Plaintiffs re-allege and incorporate Paragraphs 1 through 35 as if fully stated herein.

72. Kennedy has unjustly retained the proceeds of the Netvrk NFT Sale to Netvrk's detriment.

73. Kennedy's retention of the proceeds violates fundamental principles of justice, equity, and good conscience.

74. Kennedy's unjust enrichment exceeds 564,000, and potentially more if Kennedy has further re-invested or converted such monies.

WHEREFORE, Plaintiffs, XMOD Industries d/b/a Netvrk ("Netvrk"), Michael Katseli, and Linus Chee, respectfully request that this Court:

A. Enter judgment in favor of Plaintiffs, and against Defendants and award damages in excess of 564,000;

B. Enter an order disgorging Kennedy of any additional monies received through his unlawful holding of the Netvrk NFT Sale proceeds;

C. Impose a constructive trust with respect to any and all proceeds received from the Netvrk NFT Sale; and

D. Grant such further and other relief as this Court deems just and equitable.

## JURY DEMAND

**PLAINTIFFS CLAIM TRIAL BY JURY ON ALL COUNTS OF THIS COMPLAINT.**

| | |
|---|---|
| Dated:  September 9, 2022 | Respectfully submitted, |

                                                   **XMOD Industries, Michael Katseli, and Linus Chee,**

                                                   **By Their Attorneys,**

*/s/ Christine L. Cocheteux*
Christine L. Cocheteux, Esq. (705229)
Christine.Cocheteux@dinsmore.com
Dinsmore & Shohl, LLP
101 Arch Street
Boston, MA 02110
Telephone: (857) 305-6400
Fax: (857) 305-6401

and

Matthew C. Wasserman, Esq. (*pro hac vice* pending)
Rebekah S. Mintzer, Esq. (*pro hac vice* pending)
Dinsmore & Shohl LLP
222 W. Adams, Suite 3400
Chicago, IL 60606
(312) 837-4316
matthew.wasserman@dinsmore.com
rebekah.mintzer@dinsmore.com

**<u>VERIFICATION</u>**

      I, Linus Chee, do hereby depose and state that the allegations contained in the Verified Complaint are based upon the personal knowledge of XMOD Industries, Inc. d/b/a Netvrk, its officers and/or employees. The allegations are true to the best of my knowledge, information and belief. With respect to those allegations set forth upon information and belief, XMOD Industries, Inc. d/b/a Netvrk and I, personally, believe them to be true.

                                  **XMOD Industries, Inc. d/b/a Netvrk**

                      By: _____
                                   Linus Chee, Chief Operating Officer