UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| XMOD INDUSTRIES, a California Corporation; MICHAEL KATSELI, an individual; and LINUS CHEE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL KENNEDY, an individual; and MRKT LLC, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:22-cv-11464-IT <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

May 19, 2023

TALWANI, D.J.

On September 9, 2022, Plaintiffs XMOD Industries d/b/a Netvrk ("Netvrk"), Michael Katseli, and Linus Chee (collectively, "Plaintiffs") brought claims against Defendants Daniel Kennedy and his company MRKT, LLC ("MRKT," and collectively, "Defendants") for declaratory and injunctive relief and damages related to allegations that Kennedy converted Netvrk's money and engaged in a scheme to gain control of other Netvrk assets through fraudulent use of Netvrk's social media, marketing outlets, and partner relations.

Plaintiffs now request an order deeming service effective on Kennedy, and for entry of a default judgment against both Defendants. Combined Mot. to Deem Defendant Daniel Kennedy Served and For Default Judgment Against Daniel Kennedy and Market, LLC ("Motion") [Doc. No. 13]. For the following reasons, the requests to deem service effective and for entry of a default judgment as to Kennedy are granted and the request for entry of a default judgment as to MRKT is denied.

I.     **Background**

   A.  *Facts as Alleged in the <u>Verified Complaint</u> [Doc. No. 1]*

Netvrk is a California corporation founded by Katseli and Chee, who are its Chief Technology and Chief Executive Officers, respectively. Verified Compl. ¶¶ 4-6 [Doc. No. 1]. Netvrk developed and operates a metaverse, which allows users to create virtual worlds and create, buy, and sell goods using the Netvrk token. <u>Id.</u> at ¶¶ 11-12. The token can also be used to create Non-Fungible Tokens ("NFTs"), which are digital assets that represent real-world assets. <u>Id.</u>

Kennedy, upon information and belief, is the sole owner of MRKT, a limited liability company with a business address in Boston. <u>Id.</u> at ¶ 8. In early 2021, Kennedy was retained as an independent contractor for Netvrk to assist with marketing, social media, business management, and fundraising. <u>Id.</u> at ¶ 13. Kennedy was never classified as an employee nor received a W-2. <u>Id.</u> at ¶ 14.

Kennedy, who first adopted the title of Chief Marketing Officer, <u>id.</u> at ¶ 13, converted Netvrk's money and engaged in a scheme to gain control of other Netvrk assets through fraudulent use of Netvrk's social media, marketing outlets, and partner relations, <u>id.</u> at ¶¶ 1, 16-20. In fall 2021, Netvrk held a NFT sale over the course of seven rounds on a third-party website. <u>Id.</u> at ¶¶ 21-22. After the NFT sale was completed, Plaintiffs learned that Kennedy instructed the third-party website to transfer over $564,000 in proceeds from the sale to his own personal digital wallet without Netvrk's knowledge or consent. <u>Id.</u> at ¶ 23. Plaintiffs requested return of the funds, but Kennedy refused. <u>Id.</u> at ¶ 24.

In early 2022, Kennedy began referring to himself as the CEO of Netvrk, although he was never promoted or hired in such capacity. <u>Id.</u> at ¶ 17. In or about May 2022, Kennedy began

excluding Plaintiffs from communications with important business relationships, and Plaintiffs were required to renegotiate these relationships while Kennedy withheld information. Id. at ¶ 16.

On August 25, 2022, Kennedy was terminated from his consulting position with Netvrk. Id. at ¶ 26. Since his termination, Kennedy has refused to return Netvrk's corporate records and social media logins, has published defamatory statements on social media, and has blocked Plaintiffs from communicating on social media with their users, resulting in decreased value and growth potential for Netvrk, Id. at ¶¶ 1-3, 18-20, 27, 29. On September 7, 2022, Plaintiffs learned that Kennedy had deleted and/or deactivated Netvrk's official Twitter account and changed the account name. Id. at ¶¶ 31-32.

    B. *Background Relevant to Service on Kennedy*

On December 7, 2022, the court authorized Plaintiffs to serve Kennedy by privately messaging him via a direct message on Telegram and Discord after several failed service attempts. See Mem. & Order 4-5 [Doc. No. 12]. The court held that Plaintiffs could not serve Defendants via Kennedy's attorney Omar Sharif of the law firm Tumer & Sharif, who had indicated that he was not representing Defendants in the present matter. However, the court ordered Plaintiffs to provide Attorney Sharif a copy of the court's order by electronic mail and requested that Attorney Sharif forward a copy of the Order to Defendants. Id. at 5.

As set forth in the Motion and supporting papers, Plaintiffs emailed a copy of the Order to Attorney Sharif on December 7, 2022. Mot. ¶ 5, Ex. A [Doc. Nos. 13, 13-1]. On December 8, 2022, Plaintiffs attempted to serve Kennedy via the Telegram and Discord handles listed in their previous motion but were unable to effectuate service because the accounts had been deleted a few days prior. Mot. ¶ 6, Ex. B, Dahlstrom Decl. ¶ 2 [Doc. Nos. 13, 13-2].

On December 13, 2022, Plaintiffs' counsel directly messaged Kennedy via LinkedIn with a copy of the Summons [Doc. No. 5], Verified Complaint [Doc. No. 1], and the Order [Doc. No. 12]. Mot. ¶ 9, Ex. C [Doc. Nos. 13, 13-3].

On December 19, 2022, Plaintiffs sent a direct message with the Summons, Verified Complaint, and Order to what they contend was Kennedy's reactivated Discord account. Mot. ¶ 10 [Doc. No. 13], Ex. E [Doc. No. 13-5], Ex. F [Doc. No. 13-6]. The reactivated account used a different name, T2 #2225, and was active since January 2021. Mot. ¶ 10, Exs. D, E [Doc. Nos. 13, 13-4, 13-6]. The reactivated account sent and replied to messages involving Netvrk, see Mot. Ex. D, 3, 5 [Doc. No. 13-4], and at one point replied to a message directed to "Dan," id. at 7. That same day, Attorney Sharif confirmed receipt of the December 7, 2022 email and wrote that he "forwarded it to Mr. Kennedy to the best of my ability." Mot. ¶ 11 [Doc. No. 13]. On December 29, 2022, Plaintiffs learned that the reactivated Discord account had been deleted after Plaintiffs had messaged the account. Mot. ¶ 12, Ex. F [Doc. Nos. 13, 13-6].

## II.     Motion to Deem Service Effective on Kennedy

Service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). Under Massachusetts law, if service is unsuccessful "after diligent search… the court may on application of the plaintiff issue an order of notice in the manner and form prescribed by law." Mass. R. Civ. P. 4(d)(1), (2). If a plaintiff cannot properly serve a defendant within 90-days of the filing of the complaint or show good cause for why service was not timely completed, the complaint is subject to dismissal without prejudice. Id. at 4(j). "The plaintiff's burden of proving 'good cause' typically requires a

4

showing that the defendant actively tried to evade service." Morse v. Massachusetts Exec. Off. of Pub. Safety, 2013 WL 1397736, at *1 (D. Mass. Apr. 4, 2013).

In this circumstance, service on Kennedy via LinkedIn is not a permissible method of notice. Another court has allowed service to an international defendant via LinkedIn where the evidence, including that the defendant maintained the account and included the LinkedIn contact in his communications with plaintiff, "strongly corroborate[d]" that that the profile belonged to the defendant. See WhosHere, Inc. v. Orun, 2014 WL 670817, at *4 (E.D. Va. Feb. 20, 2014). Here, although the LinkedIn profile contained Kennedy's name and position as the CEO at Netvrk, Plaintiffs have provided no evidence that the LinkedIn profile was maintained or regularly used by Kennedy. See Strange v. Islamic Republic of Iran, 2019 WL 13158028, at *2 (D.D.C. June 4, 2019) (disallowing service via Twitter where the record did not indicate defendant's personal presence on the website). Further, Plaintiffs have not claimed that the parties regularly communicated via LinkedIn. See c.f., Jackson Lab'y v. Nanjing Univ., 2018 WL 615667, at *4 (D. Me. Jan. 29, 2018) (authorizing service by email because "when a form of communication has previously been utilized successfully by the parties, it remains a proper channel for service of process.").

However, Plaintiffs sufficiently provided Kennedy notice of the claims against him on December 19, 2022, when they sent a direct message via Kennedy's reactivated Discord account. Proper service need not be effectuated by the method most likely to reach the defendant, but rather it must be reasonably likely to notify a party of the claims against them. See Greene v. Lindsey, 456 U.S. 444, 455 (1982). The court had previously granted Plaintiffs authorization to serve Kennedy via Discord after they made several attempts to effectuate service, including by

attempting to obtain contact information for Kennedy and his attorney, asking Attorney Sharif for waiver of service of process, and attempting personal service in two different states, see Motion For Alternate Service [Doc. No. 11]; Order [Doc. No. 13].

Although the Discord handle is distinct from the handle identified in Plaintiffs' initial motion, the evidence provided by Plaintiffs sufficiently support the contention that the reactivated account does belong to Kennedy where he responded to inquiries about Netvrk and other users directed their messages to "Dan." Screenshots of the account show that the reactivated account was actively using the platform from at least July 2022 to August 2022, and the Verified Complaint [Doc. No. 1] was filed shortly thereafter September 2022. Although the record suggests that Kennedy has been evading service by deleting accounts, the court is persuaded that Kennedy has notice of the instant case where Plaintiffs claim that Attorney Sharif forwarded a copy of the court's order to Kennedy on December 19, 2022, and Plaintiffs messaged Kennedy on Discord.

Accordingly, the court finds that Kennedy has been properly served effective December 19, 2022.

### III. Motion for Entry of a Default Judgment

Plaintiffs request that the court enter a default judgment in Plaintiffs' favor against Kennedy and MRKT for $564,000 plus post-judgment interest, and for any other relief the court deems just, for Defendants' failure to respond to the complaint.[1]

---

[1] Plaintiffs' Verified Complaint [Doc. No. 1] also sought declaratory relief, injunctive relief, and punitive damages, but these items are not included in the Motion [Doc. No. 13]. Accordingly, the court considers any requests for relief beyond $564,000, plus post-judgment interest, waived.

*A. Legal Standard*

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for entry of a default judgment. The first step is entry of a default under Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The second step requires entry of a default judgment by the clerk if the plaintiff's claim is for a sum certain, or otherwise by the court, on an application for a default judgment. Fed. R. Civ. P. 55(b).

When a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. See Sec. & Exch. Comm'n v. Tropikgadget FZE, 146 F.Supp.3d 270, 275 (D. Mass. 2015). So, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. Id. While the court may set a hearing to determine damages "when the amount is in dispute or is not ascertainable from the pleadings," the court may order default judgment without a hearing where "the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." In re The Home Rests., Inc., 285 F.3d 111, 114 (1st Cir. 2002). The court must ensure that the damages awarded are reasonable and demonstrated by the evidence. Fed. R. Civ. P. 55(b)(2)(C).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "It follows that a default does not expose a defendant to impositions not properly identified before the entry of default." Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 40 (1st Cir. 2012).

B. *Discussion*

As discussed above, the court finds that Kennedy was properly served with the Verified Complaint [Doc. No. 1] and Summons [Doc. No. 5] through alternative service. In addition, Plaintiffs have shown that they served MRKT's registered agent, Legal Inc. Corporate Services Inc., at 651 N. Broad Street, Suite 201, Middletown, DE 19709, through personal service to "corporate specialist authorized to accept, who is an offer or agent of MRKT LLC." Mot. ¶ 14, Ex. G [Doc. Nos. 13, 13-7]. Accordingly, entry of default under Rule 55(a) is appropriate.

The court finds further that Defendants are not infants or incompetent persons or in the military service of the United States. Defendants have not answered or otherwise opposed the Verified Complaint [Doc. No. 1]. Accordingly, the well-pleaded allegations in the Verified Complaint are now taken as true.

The court finds further that Plaintiffs' request for relief is contemplated by the Verified Complaint [Doc. No. 1], where Plaintiffs seek actual damages in the amount Kennedy transferred to his personal digital wallet from the NFT sale. To the extent that Plaintiffs' request for relief is limited to the $564,000 from the NFT sale, Plaintiffs have stated a cognizable claim for such relief against Kennedy at least under Counts V and III, for unjust enrichment and conversion, respectively.

Under Massachusetts law, to state a claim for unjust enrichment a plaintiff must prove "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances [which] would be inequitable without payment for its value." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir.), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009) (citing Samuel Williston & Richard A.

8

Lord, A Treatise on the Law of Contracts, § 68:5 (4th ed. 1993)).Where the court finds that Kennedy unjustly retained at least $564,000 in Netvrk proceeds from the NFT sale for his own personal use, and did not return it despite multiple requests, Plaintiffs have stated a claim against Kennedy as to Count V.

Additionally, the court finds that Plaintiffs have stated a cognizable claim under Count III against Kennedy for conversion. "A plaintiff asserting a conversion claim under Massachusetts law must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993). As alleged, Kennedy improperly retained Plaintiffs' proceeds from the NFT sale for his own use despite repeated request for return, which resulted in an economic loss to Plaintiffs.[2]

However, Plaintiffs have not stated sufficient facts to enter judgment against MRKT where Plaintiffs allege that they hired Kennedy, not MRKT, as an independent consultant, and Kennedy perpetrated the alleged bad acts.

---

[2] To the extent that Plaintiffs bring other claims against Kennedy and MRKT not related to the NFT sale and seeking other relief not requested in the Motion, see Verified Compl. Counts I, II, and IV [Doc. No. 1], a finding as to liability on those counts is not necessary for the requested default judgment.

**IV.    Conclusion**

Accordingly, Plaintiffs' Motion is GRANTED as to Kennedy, and DENIED as to MRKT. Plaintiffs have demonstrated that the reasonable and proper amount of damages owed by Kennedy is $564,000, plus post-judgment interest, equaling the unjust enrichment from the improperly retained Netvrk NFT sale proceeds.

Within two weeks, Plaintiffs may file a notice of voluntary dismissal without prejudice as to MRKT, or alternatively, may file a motion for leave to amend the complaint with a proposed second amended complaint including additional facts to support their claims as to MRKT. If the court grants a motion to amend the complaint, the court would require service of the second amended complaint on MRKT before a default as to MRKT would enter.

IT IS SO ORDERED

May 19, 2023                                                                       /s/ Indira Talwani
                                                                                            United States District Judge